**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **F.C., A.C., and S.C.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-00613** |
| | ) | **Judge Crenshaw / Frensley** |
| **TENNESSEE DEPARTMENT OF** | ) | |
| **EDUCATION and FRANKLIN** | ) | |
| **SPECIAL SCHOOL DISTRICT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon two Motions to Dismiss filed pursuant to Fed. R.

Civ. P. 12(b)(6); the first, filed by Defendant Franklin Special School District ("FSSD") (Docket

No. 14), and the second, filed by Defendant Tennessee Department of Education ("TDOE")

(Docket No. 27). Each Motion is accompanied by a supporting Memorandum of Law. Docket

No. 15, 28. Plaintiffs' have filed a Response to each Motion (Docket Nos. 24, 30), and

Defendants have filed a Reply to each Response (Docket Nos. 31, 41).

Plaintiffs A.C. and S.C., in their own capacity and as parents of minor F.C., filed this

action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et

seq.; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; and the

Americans with Disabilities Act, 42 U.S.C. § 12132, seeking to appeal an administrative due

process Final Order of dismissal issued by Administrative Law Judge ("ALJ") J. Randall

LaFevor on February 17, 2016. *See* Docket No. 6, First Amended Complaint, and Exhibit A

thereto.[1]  Plaintiffs filed the due process Complaint against FSSD on November 17, 2015, seeking compensatory educational services for F.C. based on FSSD's failure to provide a free appropriate public education ("FAPE") to F.C.  *Id.*  F.C. was adopted internationally and suffers from Arthrogryposis ("AMC"), a rare joint disorder that severely limits his mobility, range of motion, strength, and dexterity.  *Id.*  Plaintiffs contend that, despite being on notice of F.C.'s background and limited exposure to formal education FSSD failed to provide F.C. with an appropriate Individual Education Program ("IEP") that was based on his unique needs as a foreign adopted child with an orthopedic impairment.  *Id.*  Plaintiffs assert that FSSD's failure to provide a FAPE to F.C. was also "the result of a systemic failure by school personnel to understand and follow the IDEA as well as a systemic failure to comply with Title VI of the Civil Rights Act of 1964 as it applies to internationally adopted children."  *Id.*  With regard to the TDOE, Plaintiffs argue that it failed to follow IDEA by: (1) failing to provide a due process procedure which is in compliance with the IDEA; (2) failing to ensure that FSSD complied with Title VI of the Civil Rights Act of 1964 when accommodating internationally adopted students with disabilities who also have limited-English proficiency; (3) failing to establish eligibility criteria for Language Impairment that complies with the IDEA; and (4) failing to ensure that school districts in Tennessee do not use the Response to Intervention ("RTI") process to delay eligibility.  *Id.*

---

[1] Exhibit A was attached to Plaintiffs' original Complaint and referenced in Plaintiffs' First Amended Complaint, but not attached to it.  Plaintiffs' failure to submit Exhibit A with their First Amended Complaint appears to be an inadvertent omission; the undersigned will therefore consider Plaintiffs' Exhibit A.

**A. FSSD's Motion to Dismiss**

FSSD filed its Motion to Dismiss and supporting materials arguing that this action must be dismissed because Plaintiffs have failed to exhaust their administrative remedies under the IDEA prior to filing their Complaint. Docket Nos. 14, 15. Specifically, FSSD contends that "[t]his case involves an improper appeal of the dismissal, without prejudice, of an administrative due process complaint brought pursuant to the [IDEA]." *Id.* FSSD asserts that:

(1) Plaintiffs filed their original due process complaint with the TDOE on or about November 17, 2015;

(2) on December 7, 2015, the ALJ issued an order declaring Plaintiffs due process complaint defective and ordering Plaintiffs to file an amended due process complaint that would cure its deficiencies by January 7, 2016;

(3) on January 4, 2016, Plaintiffs filed their amended due process complaint, but that complaint did not comply with the mandates of the ALJ's order;

(4) on February 17, 2016, the ALJ issued a Final Order declaring that the amended due process complaint "still fails to comply with 'all pleading requirements of state and federal law,' as required by the December 7, 2015 order, and therefore must be [d]ismissed";

(5) the ALJ's Final Order was a dismissal without prejudice that stated "this dismissal is specifically based on the procedural defects in the Complaint, . . . the merits of the Petitioners' claims have not been addressed. Nothing in this Order shall prevent Petitioners from filing a new Due Process Complaint in the future, provided it complies with the procedural requirements of the IDEA and other relevant law"; and

(6) instead of re-filing an acceptable due process complaint, "Plaintiffs seek to

3

circumvent the administrative procedures required under the IDEA by asking this Court to 'assume jurisdiction of,'" and decide, this case. *Id.* (internal citations omitted). FSSD argues that Plaintiff's claims are subject to exhaustion and there is no valid basis for excusing Plaintiffs' failure to exhaust their administrative remedies, such that this action should be dismissed in its entirety. *Id.*

Plaintiffs respond that they have exhausted their administrative remedies and that they have a right to appeal the ALJ's Final Order. Docket No. 24. Plaintiffs respond in the alternative that they do not need to exhaust their administrative remedies because exhaustion would be futile and inadequate. *Id., citing Honig v. Doe*, 484 U.S. 305, 326-27 (1988); *Covington v. Knox County School System*, 205 F.3d 912, 917 (6th Cir. 2000). Plaintiffs contend that insufficiency was not the sole reason for the ALJ's dismissal of their due process complaint, instead arguing that the ALJ dismissed their complaint because it included claims outside the two year statute of limitations, because it included non-IDEA claims, and because it did not meet the required pleading standards. *Id.* Plaintiffs also contend that both their initial and amended due process complaints provided "more than enough information to provide FSSD with notice of the Plaintiffs' claims," and they argue that "[a]n ALJ with training and expertise in the provisions and procedures of IDEA would be able to discern that the numerous assertions in the complaint referring to specific procedural violations resulted in a denial of a free appropriate public education." *Id.*

Plaintiffs also respond that "it would be futile for them to continue their Sisyphean efforts to submit a complaint that will be deemed sufficient enough to warrant a hearing as they have already made several good faith efforts to obtain an opportunity to be heard on the merits of their

4

complaint.  FSSD and the ALJ have not acted in good faith and have consistently disregarded the due process requirements outlined in 20 U.S.C. 1415." *Id.*  Specifically, Plaintiff argues:

(1) FSSD never answered either the initial or amended complaint.  Instead they chose to count the number of sentences in the complaint's paragraphs and provide constructive criticism of Plaintiffs' counsel's writing style;

(2) the ALJ never ordered FSSD to file an answer to the initial complaint or the amended complaint;

(3) the ALJ did not issue an order setting out the revised due process timeline after the amended due process complaint was filed;

(4) FSSD did not schedule a resolution session after the amended due process complaint was filed; and

(5) the due process timeline provides that the complaint process will be complete within 75 days of the initial due process complaint.  The ALJ issued the Final Order dismissing the complaint *without a hearing* after 92 days had passed.  *Id.* (emphasis original).

Plaintiffs maintain that a due process hearing is not necessary because educational expertise is not relevant in this case and because the failure of FSSD to properly evaluate and provide services for F.C.'s unique educational needs is already documented in his educational records, in the audio recordings of his IEP meetings, and in email correspondence between FSSD personnel, A.C., and TDOE staff members.  *Id.*

FSSD, in its Reply, argues that, "Despite their admission that 'Plaintiffs never received a hearing on the merits of their [due process] complaint,' Plaintiffs erroneously assert that they have exhausted their administrative remedies and therefore, this action is properly before this

court." Docket No. 31 (internal citations omitted).  FSSD maintains that courts have uniformly held that § 1415(i)(2)(A) does not permit an appeal from pre-hearing decisions issued by an ALJ. *Id.* (citations omitted).  FSSD further maintains that the ALJ's labeling of his decision as a "Final Order" does not change the fact that it is not actually a reviewable "Final Order" since he did not render a decision on the merits and the "Final Order" did not include any of the requisite elements.  *Id.*  FSSD argues that in order for an order to constitute a "final order" in a special education case, it must include: (1) detailed findings of fact and conclusions of law; (2) a determination by the ALJ in the findings of fact regarding meaningful participation by the parent in the development of the IEP for the student; and (3) a determination of prevailing party status on an issue by issue basis.  *Id.*, *citing* Tenn. Code Ann. § 49-10-606.  FSSD notes that the ALJ specifically and explicitly stated that his dismissal was based on the "procedural defects in the Complaint," adding that "the merits of the Petitioners' claims have not been addressed."  *Id.*, *citing* ALJ's Final Order, Docket No. 1-1.

FSSD also replies that Plaintiffs' have not established that they fall into the "futility exception" to the IDEA's exhaustion requirement.  *Id.*  Specifically, FSSD argues that Plaintiffs' failure to amend their due process complaint to comply with the clear directives in the ALJ's order does not evidence good faith and does not excuse their statutory obligation to exhaust their administrative remedies.  *Id.*  FSSD asserts that Plaintiffs' claims revolve around their alleged deprivation of appropriate educational services to F.C., their "gross mismanagement of F.C.'s educational program," and their alleged denial of F.C.'s access to and participation in equal services, programs, and activities, such that they are "precisely the types of fact-intensive inquiries that the administrative process was designed to address."  *Id., citing* Docket No. 6,

Amended Complaint. FSSD maintains, therefore, that exhaustion is not futile, but rather, is mandatory. *Id.*

For the reasons discussed below, the undersigned finds that Plaintiffs have failed to exhaust their administrative remedies as required; the undersigned therefore recommends that FSSD's Motion to Dismiss (Docket No. 14) be GRANTED.

**B. TDOE's Motion to Dismiss**

TDOE filed its Motion to Dismiss and supporting materials arguing that this action must be dismissed because Plaintiffs have failed to exhaust their administrative remedies under the IDEA prior to filing their Complaint. Docket Nos. 27, 28. TDOE argues that the ALJ properly dismissed Plaintiffs' amended due process complaint because it failed to comply with his order, it contained factual allegations that allegedly occurred beyond the two-year statute of limitations period, and it contained claims arising under legal theories besides the IDEA that were outside the ALJ's subject matter jurisdiction. *Id.*

TDOE further argues that the ALJ properly dismissed Plaintiffs' amended due process complaint because it did not sufficiently describe the nature of the problem as mandated by the IDEA. *Id.* Specifically, TDOE argues that Plaintiffs' amended due process complaint did not discuss how the alleged substantive and procedural violations of the IDEA interfered with, or harmed, F.C.'s education, and also failed to relate the alleged facts and procedural violations in paragraphs 6-60 to the broad assertions of the failures of the school system and/or personnel in paragraphs 61-79. *Id.* TDOE contends that 20 U.S.C. § 1415(b)(7)(A)(ii)(III) provides that, for each matter raised, the complaint must include "a description of the problem of the child relating to such proposed initiation or change, including facts relating to such problem." *Id.* TDOE

argues that an adequate description of the problem serves to put the other party on notice and create a factual basis for the dispute before the initiation of adversarial proceedings. *Id., citing Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 55 (2006). TDOE maintains that Plaintiffs' amended due process complaint essentially contains a 15 page narrative of F.C.'s educational history followed by assertions of improper conduct but lacks the requisite causal connection, and therefore that it was proper for the ALJ to dismiss it. *Id.*

TDOE additionally argues that because Plaintiffs elected not to re-file their due process complaint and an ALJ has not conducted a hearing and issued a decision on the merits of their claims, Plaintiffs have failed to exhaust their administrative remedies, as required under the IDEA. *Id.* TDOE argues that exhaustion is required when a plaintiff alleges injuries that could be redressed to any degree by the IDEA's procedures and remedies, and it maintains that exhaustion is required for any claim that directly relates to a student's access to a FAPE, regardless of the statute invoked. *Id., citing S.E. v. Grant Cnty. Bd. Of Ed.,* 544 F.3d 633, 642 (6th Cir. 2008); *Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 434 (6th Cir. 2006). TDOE contends that Count I of Plaintiffs' Amended Complaint alleges that Defendants required Plaintiffs to meet a heightened pleading standard inconsistent with the IDEA and thus denied Plaintiffs a due process hearing under 20 U.S.C. § 1415(f), while Count III of Plaintiffs' Amended Complaint alleges that TDOE denied F.C. a FAPE by using eligibility criteria that conflicted with the IDEA and by failing to prevent delays to eligibility. *Id., citing* Docket No. 6, ¶¶ 6, 95, 96, 101, 103. TDOE maintains that it is undisputed that Plaintiffs have not completed the IDEA's administrative process because their amended due process complaint was dismissed without a hearing. *Id.* TDOE further maintains that the IDEA's administrative remedies are not

foreclosed to Plaintiffs, since the ALJ, in his Final Order, explicitly stated, "Nothing in this Order shall prevent Petitioners from filing a new Due Process Complaint in the future, provided it complies with the procedural requirements of the IDEA and other relevant law." *Id., quoting* Docket No. 22, Feb. 17 Order, p. 3.

TDOE argues that because no due process hearing has occurred, Counts I and III - the counts alleging TDOE violations of the IDEA - should be dismissed for failure to exhaust administrative remedies. *Id.* TDOE further argues that "Count V is likewise subject to dismissal for failure to exhaust because the alleged violations of the ADA and Rehab Act flow from a purported violation of § 1415 of the IDEA," and because the alleged injuries - denial of due process under the IDEA and denial of "substantive educational relief" - are the sort of "injuries that could be redressed by the IDEA's procedures and remedies." *Id., citing* Docket No. 6, ¶¶ 95, 108; *Grant Cnty. Bd. Of Ed.*, 544 F.3d at 642.

TDOE additionally argues that this Court lacks jurisdiction to review the ALJ's determination concerning the (in)sufficiency of Plaintiffs' administrative due process complaint. *Id.* TDOE contends that a right to bring suit in a district court exists for findings and decisions made under 20 U.S.C. § 1415(f), (g), or (k), and that, "[n]otably absent from this list is a determination on the sufficiency of the due process complaint, which is made under subsection (c), such that a determination on the due process complaint's sufficiency is not reviewable in federal court. *Id.*

Finally, TDOE contends that Plaintiffs' fail to state against it for violation of Title VI of the Civil Rights Act of 1964, because they cannot establish that TDOE intentionally discriminated against F.C. because of his race, color, or national origin. *Id.* TDOE argues that

Plaintiffs' allegation that "TDOE failed to ensure that FSSD complied with Title VI when accommodating students with disabilities who also have limited English proficiency," is conclusory and fails to allege intentional discrimination. *Id.* TDOE further argues that Plaintiffs' argument that F.C.'s "limited exposure to both formal schooling and English" affected his ability to engage with the general education curriculum, likewise cannot be construed as alleging intentional discrimination. *Id.* TDOE contends that, without factual allegations that the TDOE or its rules, regulations, or policies intentionally excluded F.C. from participating in the general education curriculum or otherwise denied him the benefits of a public education because of his race, Plaintiffs' Title VI claims against it must be dismissed. *Id.*

Plaintiffs respond that TDOE's response did not address their claims against it that it required school districts to use eligibility criteria for Language Impairment that did not comply with the IDEA and that it failed to ensure that FSSD did not use the RTI process to delay eligibility. Docket No. 30, *referencing* Docket No. 6, ¶¶ 101, 103. Plaintiffs also respond that their Amended Complaint does not raise Title VI claims, but rather, that they assert that TDOE violated the IDEA by failing to comply with the requirements of Title VI when accommodating students with disabilities who also have limited English proficiency. *Id.*, *citing id.* at ¶ 102. Specifically, Plaintiffs maintain that FSSD failed to properly access F.C. in 2010 and failed to appropriately consider his language needs in the subsequent school years, and that TDOE should have been aware of FSSD's non-compliance with the Title VI laws based on TDOE's obligation to monitor school districts for compliance. *Id.* Plaintiffs note that TDOE was "unequivocally aware of FSSD's failure to appropriately address F.C.'s language needs in his educational programming, because A.C. had reached out to Jan Lanier, ESL Coordinator / Title III Consultant

at the TDOE in February of 2015." *Id., citing id.* at ¶ 73.

Plaintiffs further respond that exhaustion is not required in a claim against a State Educational Agency, such as TDOE. *Id.* Specifically, Plaintiffs maintain that exhaustion is not required when it would be futile or inadequate to protect Plaintiffs' rights, and they argue that because TDOE is a State Educational Agency, it has an interest in upholding, rather than changing, its current practices, such that exhaustion is not required. *Id., citing Donoho ex rel. Kemp v. Smith Cnty. Bd. Of Educ.*, 21 F. App'x 293 (6th Cir. 2001); *W.H. v. Tenn. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 7206, 16 (M.D. Tenn. Jan. 20, 2016).

Plaintiffs additionally contend that exhaustion is not required because they are seeking injunctive relief that can not be awarded by an ALJ. *Id.*, *citing* Docket No. 6, p. 27. Plaintiffs note that they are asking this Court to order TDOE to establish proper due process procedures that provide students with disabilities and their parents or guardians with a fair and impartial hearing as mandated by the IDEA. *Id.*

TDOE, in its Reply, argues that Plaintiffs' Response does not challenge or attempt to distinguish the authority cited in support of TDOE's position that Plaintiffs have no right under the IDEA to a federal district court review of a pre-hearing determination on the due process complaint's sufficiency. Docket No. 41. TDOE further replies that, despite Plaintiffs' assertions to the contrary, the IDEA does not incorporate the requirements of Title VI. *Id.* TDOE notes that Plaintiffs seek to hold it liable for an IDEA violation for alleged non-compliance with Title VI by citing two sources of authority, one of which is no longer good law, and neither of which mentions the IDEA. *Id.* TDOE argues, therefore, that because Plaintiffs have not established that the IDEA incorporates Title VI's requirements, Plaintiffs' IDEA claim premised on an

alleged Title VI violation must be dismissed. *Id.* TDOE adds that, even if Plaintiffs' could demonstrate that a Title VI violation also constitutes an IDEA violation, the Title VI claim is still subject to dismissal because there is no private right of action to enforce federal regulations promulgated under § 602 of Title VI, and because Plaintiffs have not alleged the type of intentional discrimination necessary to sustain a Title VI action.. *Id., citing Lau. Alexander v. Sandoval,* 532 U.S. 275, 293 (2001).

TDOE additionally replies that Plaintiffs do not satisfy the futility or inadequacy exceptions to the exhaustion requirement. *Id.* TDOE asserts that Plaintiffs Amended Complaint challenges the sufficiency of F.C.'s IEPs and related services; it contends that this case raises issues about an individual child's IEPs and their implementation and is accordingly the quintessential IDEA case which mandates exhaustion. *Id.* TDOE further argues that to accept Plaintiffs' desired interpretation of distinguishable and inapposite case law would eliminate the IDEA's exhaustion requirement for all claims raised against State Educational Agencies, a result that "would endanger not only the procedural but also the substantive purposes of the [IDEA]." *Id., citing Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989).

Finally, TDOE replies that Plaintiffs argument that exhaustion is futile because they seek injunctive relief is unavailing because, as the party seeking to bypass the IDEA's administrative procedures, Plaintiffs have "the burden of demonstrating the futility or inadequacy" of exhaustion, but they have not done so. *Id., citing Covington v. Knox. Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2006). TDOE argues that Plaintiffs have failed to meet this burden because they have not cited any authority in support of their contention that exhaustion is futile or inadequate when a plaintiff seeks injunctive relief under the IDEA, nor have they distinguished

their case from those where courts have held that a request for injunctive relief or monetary relief, forms of relief unavailable in an administrative proceeding, did not establish futility. *Id., citing Fry v. Napoleon Cnty. Schs.*, 788 F.3d 622, 630 (6th Cir. 2015), *S.E. v. Grant Cnty. Bd. Of Educ.*, 544 F.3d 633, 641-42 (6th Cir. 2008).

For the reasons discussed below, the undersigned finds that Plaintiffs have failed to exhaust their administrative remedies as required; the undersigned therefore recommends that TDOE's Motion to Dismiss (Docket No. 27) be GRANTED.

## II.  Law and Analysis

### A.  Individuals with Disabilities Education Act - 20 U.S.C. § 1400, *et seq*.

The IDEA is a federal statute enacted to ensure that all children with disabilities have access to a free appropriate public education ("FAPE") designed to meet their unique needs. *Burilovich ex rel. Burilovich v. Bd. of Educ. of the Lincoln Consol. Sch.*, 208 F.3d 560, 565 (6th Cir. 2001), *citing* 20 U.S.C. §§1400(d)(1)(A), 1401(25), 1412.  The IDEA additionally establishes formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE. *See*, *e.g.*, 20 U.S.C. § 1415(a).  One of those procedures is the opportunity to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6)(A).  Any complaints must be given an impartial due process hearing, and, if necessary, a review by a higher state agency.  20 U.S.C. §§ 1415(f), (g).  Persons dissatisfied with the results of the administrative hearing and appeal may, after exhausting their administrative remedies, file suit in state or federal court for judicial review of the administrative decision.  20 U.S.C. §§ 1415(I), (l).  Absent a few exceptions, plaintiffs

must exhaust their administrative remedies before filing a civil action to enforce their rights

under the IDEA.  *Id.*  The party bringing the action has 90 days from the date of the decision of

the hearing officer to file suit.  20 U.S.C. § 1415(i)(2)(B).

With regard to the IDEA's exhaustion requirement, the provision requiring exhaustion

covers not only claims brought under the IDEA, but claims that could have been brought under

the IDEA:

> Nothing in this chapter shall be construed to restrict or limit the
> rights, procedures, and remedies available under the Constitution,
> the Americans with Disabilities Act of 1990, title V of the
> Rehabilitation Act of 1973, or other Federal laws protecting the
> rights of children with disabilities, except that before the filing of a
> civil action under such laws seeking relief that is also available
> under this subchapter, the procedures under subsections (f) and (g)
> of this section shall be exhausted to the same extent as would be
> required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

Additionally, when a plaintiff alleges injuries that "could be redressed to any degree by

the IDEA's procedures and remedies, exhaustion of those remedies is required."  *S.E. v. Grant

Cnty. Bd. of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008).

Determining whether the exhaustion requirement is triggered centers on whether the suit

seeks relief for the denial of a FAPE.  *Fry v. Napoleon Community Schools, et al.*, 579 U.S. ____

(decided February 22, 2017)(slip op.).  As the Supreme Court recently stated:

> [T]o meet that statutory standard, a suit must seek relief for the
> denial of a FAPE, because that is the only "relief" the IDEA makes
> "available." . . . [I]n determining whether a suit indeed "seeks"
> relief for such a denial, a court should look to the substance, or

14

gravamen, of the plaintiff's complaint.[2]

*Fry, supra* (footnote in original).

The *Fry* Court explained:

> . . . A court deciding whether §1415(l) applies must therefore examine whether a plaintiff's complaint - the principal instrument by which she describes her case - seeks relief for the denial of an appropriate education.
>
> But that examination should consider substance, not surface. The use (or non-use) of particular labels and terms is not what matters. The inquiry, for example, does not ride on whether a complaint includes (or, alternatively, omits) the precise words(?) "FAPE" or "IEP." After all, §1415(l)'s premise is that the plaintiff is suing under a statute *other than* the IDEA, like the Rehabilitation Act; in such a suit, the plaintiff might see no need to use the IDEA's distinctive language - even if she is in essence contesting the adequacy of a special education program. And still more critically, a "magic words" approach would make §1415(l)'s exhaustion rule too easy to bypass. . . . Section 1415(l) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way.
>
> . . .
>
> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school - say, a public theater or library? And second, could an *adult* at the school - say, an employee or visitor - have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject;

---

[2] In reaching these conclusions, we leave for another day a further question about the meaning of §1415(l): Is exhaustion required when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests - here, money damages for emotional distress - is not one that an IDEA hearing officer may award? . . .

after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

. . .

A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute - thus starting to exhaust the Act's remedies before switching midstream. . . . A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE - with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy. . . . But prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term.

*Fry, supra* (italics in original).

## **B. Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)**

A Motion to Dismiss for failure to exhaust administrative remedies in a claim brought under the IDEA is considered pursuant to Fed. R. Civ. P. 12(b)(6). *See, e.g., Sagan v. Sumner Cnty. Bd. Of Educ.*, 726 F. Supp. 2d 868, 872 (M.D. Tenn. 2010). Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A

complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## C.  The Case At Bar

### 1.  Defendant FSSD

As Plaintiffs state, they "filed a due process complaint against FSSD on November 17, 2015 seeking compensatory educational services for F.C. based on FSSD's failure to provide a

free appropriate public education to F.C." Docket No. 6, §§ 5, 87. The allegations of Plaintiffs'

First Amended Complaint, as well as those in their due process complaint, thus relate squarely to

FSSD's alleged failure to provide a FAPE to F.C. *See* Docket No. 6, ¶¶ 1-5, 30-87. Exhaustion

is therefore required. *See Fry, supra.*

Moreover, Plaintiffs' have "previously invoked the IDEA's formal procedures to handle

the dispute - thus starting to exhaust the Act's remedies before switching midstream." *Fry,*

*supra.* As noted, Plaintiffs' filed their original due process complaint with the TDOE on

November 17, 2015 seeking compensatory educational services for F.C. based on FSSD's failure

to provide a FAPE to F.C. Docket No. 6, ¶¶ 2, 87. Then, on December 7, 2015, the ALJ issued

an Order finding that Plaintiffs' original due process complaint was defective and ordering

Plaintiffs to file an amended due process complaint that removed any claims outside the two-year

statute of limitations period, removed all non-IDEA claims, and complied with the pleading

standards set forth in 20 U.S.C. §1415(b)(7)(A)(ii) and 34 C.F.R. §300.508(b)(5)&(6). *Id.*, ¶ 89;

Docket No. 1-1. The ALJ's Order stated in part as follows:

> . . . The Complaint is defective as described in paragraphs (1) and
> (3), above.[3]

---

[3] Paragraphs (1) through (3) of the Order contained the following language:

> (1)     That all claims that are based on events that took place
>         prior to November 16, 2013 are barred by the applicable
>         Statute of Limitations [20 U.S.C. §1415(f)(3)(C); 34 C.F.R.
>         §300.507(a)(2)]; and
> (2)     That the Rules and Regulations of the State Board of
>         Education [Rule 0520-01-09-.18, TENN. COMP. R. &
>         REGS.] empower ALJs from the Secretary of State's Office
>         to hear only those "complaints arising under the Individuals
>         with Disabilities Education Act, 20 U.S.C. §§1400, *et seq.*"
>         ALJs therefore lack subject-matter jurisdiction over claims

Additionally, the Respondent is correct in its assertion that the Complaint generally fails to comply with the pleading standards set forth in 20 U.S.C. §1415(b)(7)(A)(ii); and 34 C.F.R. §300.508(b)(5)&(6). The law requires Complaints initiating Due Process Hearings to be sufficiently specific in their allegations to allow the responding party to understand what the Petitioner believes the Respondent has done or failed to do [e.g., specifically how the LEA has improperly implemented the child's IEP, or failed to implement the IEP], how that action or inaction has harmed or interfered with the Petitioner's education, and what action the Petitioner proposes to remedy the problem. Those requirements are delineated in 34 C.F.R. Part 300.508(b)(5)&(6). Failure to comply with those minimum requirements will prevent the Petitioner from proceeding to a Due Process Hearing. As the federal regulation states, "A party may not have a hearing on a due process complaint until the party . . . files a due process complaint that meets the requirements of [34 C.F.R. Part 300.508(b)]." *See also,* 34 C.F.R. §300.508(d); Rule 12, TENN. R. CIV. PRO.

Accordingly, it is hereby concluded that the Petitioners may not proceed to hearing on their Complaint in its present state. Therefore, pursuant to 34 C.F.R. Part 300.508(d)(3)(ii), rather than dismissing their Complaint immediately, **the Petitioners are granted leave to file an Amended Complaint that deletes reference to the specific improper claims as set out above, and which complied with all the other legal requirements of the IDEA.** If the Petitioners choose to file an Amended Complaint, they shall do so no later than Thursday, January 7, 2016.

*. . . Should the Petitioners fail to file an Amended Complaint that complies with all pleading requirements of state and federal law by the deadline imposed, this due process complaint shall be dismissed.*

Docket No. 1-1 (footnote and boldface in original, italics added).

On January 4, 2016, Plaintiffs filed their amended due process complaint, but did not

---

arising under other legal authority; and
(3)     That the Complaint contains no factual allegations supporting the "Petitioners' claim that the Respondent violated 'Section 504 by engaging in retaliatory actions against [F.C.'s mother] A.C.'"

remove the claims that occurred outside the statute of limitations period or the non-IDEA claims, in contravention of the ALJ's Order. Docket No. 6, ¶ 90; Docket No. 1-1. Thereafter, FSSD filed a Motion to Dismiss; Plaintiffs filed a Response; and FSSD filed a Reply. *Id.*, ¶ 92; Docket No. 1-1. On February 17, 2016, the ALJ issued a "Final Order Dismissing Amended Due Process Complaint" dismissing Plaintiffs' amended complaint without prejudice. *Id.*, ¶ 93; Docket No. 1-1. The ALJ's "Final Order" stated in relevant part:

> A fair reading of the Amended Complaint reveals that it failed to delete the original Complaint's references to the claims found in the December 7, 2015 Order to be barred due to time-limitation or lack of subject-matter jurisdiction, as mandated by that Order.[4] In an apparent effort to address the lack of specificity in the original Complaint's allegations, the Petitioners added new (or re-numbered) paragraphs, numbered 61-79, in which they listed numerous LEA actions that they deemed to violate the IDEA. However, those paragraphs simply refer to broad assertions of school system's or personnel failures, which are not linked in a meaningful way to the lengthy factual recitation that precedes them.[5] Without some way to connect the alleged violation to the underlying factual assertions assumedly contained elsewhere in the complaint, the Respondents failed to "articulate with respect to each matter relating to the 'identification, evaluation, or educational placement of the child,' a sufficient 'description of the nature of the problem of the child relating to such proposed initiation or change.'" 20 U.S.C. §1415. As the Respondent argued in its *Reply*, "Absent a sufficient description of the nature of each alleged problem, the Board is left to guess at its own peril as to the precise nature of Petitioners' numerous claims." Such a procedure would be highly ineffective procedurally, and would hinder the IDEA's stated objective of promoting resolution of disputes between the parties by encouraging dialogue and mutual efforts to

---

[4] The bulk of the Amended Complaint appears to be a nearly-verbatim reproduction of the original Complaint, including those provisions that the Petitioner's were specifically ordered to remove before re-filing.

[5] Most assertions are not specific as to dates of actions or inactions, participating parties, etc.

foster an appropriate and adequate educational program for all children. It is therefore concluded that the Petitioners' Amended Due Process Complaint fails to remedy the defects found in their original Complaint, by failing to delete reference to the specific improper claims as set out in the December 7, 2016 Order, and failing to comply with the all of the [*sic*] other procedural requirements of the IDEA. The December 7, 2016 Order provided that such a failure by the Petitioners would result in dismissal of their Complaint.

Accordingly, IT IS HEREBY ORDERED that the Petitioners' Amended Due Process Complaint is DISMISSED.

*It is noted, however, that this dismissal is specifically based on procedural defects in the Complaint, and that the merits of the Petitioners' claims have not been addressed. Nothing in this Order shall prevent the Petitioners from filing a new Due Process Complaint in the future, provided it complies with the procedural requirements of the IDEA and other relevant law.*

Docket No. 1-1 (footnotes, capitalization, and italics in original).

As can be seen, the ALJ, in his Order, specifically sets forth why Plaintiffs' original due process complaint was deficient and what Plaintiffs needed to do to cure those deficiencies. *Id.* The ALJs Order also specifically and emphatically cautioned, "*Should the Petitioners fail to file an Amended Complaint that complies with all pleading requirements of state and federal law by the deadline imposed, this due process complaint <u>shall be dismissed</u>.*" *Id.* (italics in original, underlining added). Despite the ALJ's clear instructions and admonition, Plaintiffs chose to file an amended due process complaint that they knew failed to comply with the ALJ's Order. *See* Docket No. 6, ¶ 90. Plaintiffs' decision to file a non-compliant amended due process complaint resulted in their complaint's dismissal on procedural grounds. *See* Docket No. 1-1. There was no hearing or a decision on the merits, and Plaintiffs' cannot now use this Court to bypass the ALJ's Order or the IDEA's exhaustion requirement.

Plaintiffs maintain that their appeal to this Court is proper because "Courts have held that pre-hearing Final Orders can be appealed." Docket No. 24. Although Plaintiffs so argue, the two cases cited by Plaintiffs are inapposite and non-binding; Plaintiffs have failed to provide this Court with any relevant, binding authority supporting their assertion that this Court has jurisdiction to review the ALJ's pre-hearing dismissal of their amended due process complaint on procedural grounds. Absent such authority, this Court declines to "assume jurisdiction" as requested by Plaintiffs.

Plaintiffs attempt to excuse their conscious disregard of the ALJ's instructions by arguing that both their initial due process complaint and amended due process complaint "provided more than enough information to provide FSSD with notice of the Plaintiffs' claims." *Id.* The ALJ, however, disagreed, as (1) in his initial Order, he explicitly ordered Plaintiffs to comply with the pleading standards set forth in 20 U.S.C. §1415(b)(7)(A)(ii) and 34 C.F.R. §300.508(b)(5)&(6) and he gave them an opportunity to do so; and (2) in his Final Order he addressed Plaintiffs attempt at curing this deficiency but noted that the added paragraphs "simply refer to broad assertions of school system's or personnel failures, which are not linked in a meaningful way to the lengthy factual recitation that precedes them," adding, "[m]ost assertions are not specific as to dates of actions or inactions, participating parties, etc." Docket No. 1-1. Plaintiffs' opinion that their initial and amended due process complaints were sufficiently detailed does not excuse their non-compliance with the ALJ's instructions or their failure to exhaust.

Plaintiffs further argue that "it would be futile for them to continue their Sisyphean efforts to submit a complaint that will be deemed sufficient enough to warrant a hearing as they have already made several good faith efforts to obtain an opportunity to be heard on the merits of

their complaint." Docket No. 24. Plaintiffs contention that it would be futile for them to have

submitted a compliant complaint is conclusory, and their assertion that they "made several good

faith efforts to obtain an opportunity to be heard on the merits of their complaint" is unsupported

by their actions and by the record. The ALJ clearly articulated the what the deficiencies were in

Plaintiffs' original due process complaint, explained how those deficiencies needed to be cured,

and, rather than dismissing Plaintiffs original due process complaint as defective, gave Plaintiffs

an opportunity to cure those deficiencies by filing an amended due process complaint. Docket

No. 1-1. As discussed above, Plaintiffs chose to disregard the ALJ's instructions and, as the ALJ

noted, chose to re-file essentially the same non-compliant complaint. *Id.* (" The bulk of the

Amended Complaint appears to be a nearly-verbatim reproduction of the original Complaint,

including those provisions that the Petitioner's were specifically ordered to remove before re-

filing. "). This argument likewise fails to excuse Plaintiffs failure to exhaust.

Plaintiffs assert that neither FSSD, nor the ALJ, have acted in good faith because:

(1) FSSD never answered either the initial or amended due process complaint, but rather "chose

to count the number of sentences in the complaint's paragraphs and provide constructive

criticism of Plaintiffs' counsel's writing style"; (2) the ALJ never ordered FSSD to file an answer

to the initial or amended due process complaints; (3) the ALJ did not issue an order setting out

the revised due process timeline after the amended due process complaint was filed; (4) FSSD

did not schedule a resolution session after the amended due process complaint was filed; and

(5) the due process timeline provides that the complaint process will be complete within 75 days

of the initial due process complaint, but the ALJ issued the Final Order dismissing the complaint

without a hearing after 92 days had passed.[6]  *Id.*  Although Plaintiffs proffer these contentions as support for their assertion that neither FSSD nor the ALJ acted in good faith, such that they should be excused from exhausting their administrative remedies, Plaintiffs fail to proffer any authority establishing that: (1) FSSD was required to file an answer rather than its filed  Motion to Dismiss; (2) the ALJ was required to order FSSD to file an answer rather than its filed Motion to Dismiss; (3) the ALJ was required to set out a revised timeline after the amended due process complaint was filed but before it was considered; (4) FSSD was required to schedule a resolution session after the amended due process complaint was filed but before it was ruled on; and (5) the ALJ's 17 day delay in issuing a Final Order when he allowed time for the filing of an amended due process complaint rather than dismissing Plaintiffs' initial defective due process complaint rendered exhaustion unrequired.  Plaintiffs have failed to demonstrate either that these alleged actions constituted bad faith or that they excused Plaintiffs' failure to exhaust their administrative remedies.

Additionally, when dismissing Plaintiffs amended due process complaint, the ALJ explicitly and emphatically explained "*that this dismissal is specifically based on procedural defects in the Complaint, and that the merits of the Petitioners' claims have not been addressed. Nothing in this Order shall prevent the Petitioners from filing a new Due Process Complaint in the future, provided it complies with the procedural requirements of the IDEA and other relevant law.*"  Docket No. 1-1 (emphasis in original).  Because the ALJ dismissed Plaintiffs' complaint

---

[6] Although Plaintiffs complain that the ALJ issued his Final Order 92 days after the initial due process complaint was filed, the 92 days includes the time the ALJ gave Plaintiffs for filing an amended due process complaint, rather than simply dismissing their original complaint as defective.

without prejudice, Plaintiffs can file a new due process complaint for subsequent harms should they choose to do so; their avenue for relief, therefore, is not foreclosed.

### 2. Defendant TDOE

As the *Fry* Court stated, "Section 1415(l) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry, supra.* Although the allegations of Plaintiffs' First Amended Complaint do not explicitly allege that TDOE failed to provide a FAPE to F.C., the gravamen of Plaintiffs' contentions that TDOE failed to: (1) provide an IDEA compliant due process procedure; (2) ensure that FSSD complied with Title VI of the Civil Rights Act of 1964 when accommodating internationally adopted students with disabilities who also have limited-English proficiency; (3) establish IDEA compliant eligibility criteria for Language Impairment; and (4) ensure that school districts in Tennessee do not use the Response to Intervention ("RTI") process to delay eligibility (Docket No. 6, ¶ 6), is that as a result of these alleged failures, F.C. was denied a FAPE. Accordingly, exhaustion is required.

Plaintiffs argue that against TDOE they seek injunctive relief, relief that cannot be awarded by an ALJ. Docket No. 30. Specifically, Plaintiffs note that they are "asking this Court to order the TDOE to establish proper due process procedures that provide students with disabilities and their parents or guardians with a fair and impartial hearing as mandated by the IDEA." *Id.* Plaintiffs maintain essentially that because they seek relief that cannot be awarded by an ALJ, exhaustion is not required. While the *Fry* Court specifically declined to address "a case in which a plaintiff, although charging the denial of a FAPE, seeks a form of remedy that an IDEA officer cannot give," the *Fry* Court explained that the effect of seeking a remedy that an

IDEA officer cannot give only comes into play after using their analysis to reach a determination of whether the crux of the case involves the denial of a FAPE. *Fry*, *supra*, n. 4, 8.

As discussed above, this case squarely involves the denial of a FAPE, and exhaustion is required. Plaintiffs' started down the path of exhaustion but did not complete it, nor did they file a new due process complaint as expressly permitted by the ALJ. Additionally, as has been discussed, Plaintiffs have failed to establish that their lack of exhaustion is somehow justified or excused, or that exhaustion would be futile. Finally, as has also been discussed, because the ALJ dismissed Plaintiffs' complaint without prejudice, Plaintiffs can file a new due process complaint for subsequent harms should they so choose.

### III. Conclusion

For the reasons discussed above, the undersigned finds that Plaintiffs have failed to exhaust their administrative remedies as required; the undersigned therefore recommends that the instant Motions to Dismiss (Docket Nos. 14, 27) be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge